UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>SATICOY BAY LLC SERIES 1915 AUTUMN SAGE, et al.,<br><br>Defendant(s). | Case No. 2:18-CV-642 JCM (PAL)<br><br>ORDER |

Presently before the court is defendant Saticoy Bay LLC Series 1915 Autumn Sage's ("Saticoy Bay") motion for summary judgment. (ECF No. 26). Plaintiff U.S. Bank National Association ("U.S. Bank") filed a response (ECF No. 30), to which Saticoy Bay replied (ECF No. 32).

Also before the court is U.S. Bank's motion for summary judgment. (ECF No. 27). Saticoy Bay filed a response (ECF No. 31), to which U.S. Bank replied (ECF No. 33).

**I.  Facts**

This action arises from a dispute over real property located at 1915 Autumn Sage Avenue, Las Vegas, Nevada ("the property"). (ECF No. 1).

Darby A. Clayson and William S. Clayson ("the Claysons") purchased the property on or about September 13, 2005. *See* (ECF No. 26-3). The Claysons financed the purchase with a loan in the amount of $322,000.00 from Silver State Financial Services ("Silver State"). *Id*. Silver State secured the loan with a deed of trust, which names Silver State as the lender, Ticor Title of Nevada as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*.

On June 10, 2011, Eldorado Neighborhood Second Homeowners Association ("Eldorado"), through its agent Assessment Management Services ("AMS"), recorded a notice of delinquent assessment lien ("the lien") against the property for the Claysons' failure to pay Eldorado in the amount of $736.09. (ECF No. 13-1). On November 14, 2011, Eldorado recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $1,671.33 as of November 10, 2011. (ECF No. 13-2). On December 23, 2011, U.S. Bank acquired all beneficial interest in the deed of trust. (ECF No. 26-4).

On February 18, 2013, U.S. Bank's loan servicer contacted Eldorado, through its agent AMS, to disclose that it received the notice of default and will take necessary actions to protect the deed of trust. (ECF No. 27-1). On March 18, 2013, U.S. Bank's loan servicer contacted AMS again to discuss the foreclosure proceedings. (ECF No. 27-3). In the course of the communication, AMS, on behalf of Eldorado, represented that the foreclosure sale will not wipe out U.S. Bank's deed of trust. *Id*.

On June 18, 2013, Eldorado recorded a notice of foreclosure sale against the property. (ECF No. 13-3). On May 27, 2014, Eldorado sold the property in a nonjudicial foreclosure sale to defendant Saticoy Bay in exchange for $11,200.00. (ECF No. 13-4). On May 30, 2014, Eldorado recorded the trustee's deed upon sale with the Clark County recorder's office. *Id*.

On April 10, 2018, U.S. Bank initiated this action, asserting a single claim for quiet title against all defendants. (ECF No. 1). Now, U.S. Bank and Saticoy Bay have file cross-motions for summary judgment. (ECF Nos. 26, 27).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d

1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

As a preliminary matter, the court addresses Saticoy Bay's argument that the statute of limitations bars U.S. Bank's quiet title claim. (ECF No. 31). NRS 11.070 sets forth a five-year limitations period for quiet title claims. Nev. Rev. Stat. 11.070. Eldorado sold the property in a nonjudicial foreclosure sale on May 27, 2014. (ECF No. 13-4). U.S. Bank brought this lawsuit less than five years later, on April 10, 2018. (ECF No. 1). Thus, the statute of limitations does not bar U.S. Bank's quiet title claim and the court adjudicates the merits of this case.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 13-1, 13-2, 13-3, 13-4). Further, the recorded trustee's deed upon sale contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 13-4); *see Shadow Wood*, 466 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

U.S. Bank argues that the foreclosure sale did not extinguish the deed of trust because the foreclosure sale was commercially unreasonable. (ECF No. 27). The court agrees.

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963))) ("*Long*").

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

The trustee's deed upon sale states that the fair market value of the property was $169,483.00 at the time of the foreclosure sale. (ECF No. 13-4). Eldorado sold the property for $11,200.00, roughly 7% of the property's market value. *See id*. This sales price was grossly inadequate. Moreover, because there is a wide disparity between the sale price and the property's fair market value, U.S. Bank need only show a slight circumstance of unfairness. *See Nationstar Mortgage, LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 648–49 (Nev. 2017) ("where the inadequacy is palpable and great, very slight additional evidence of unfairness or irregularity is sufficient").

The Nevada Supreme Court has established that "an HOA's representation that the foreclosure sale will not extinguish the first deed of trust" is an "irregularity that may rise to the level of fraud, unfairness, or oppression[.]" *Nationstar Mortgage*, 405 P.3d at 645 n.11. Here, U.S. Bank has provided the court with records of email communications between U.S Bank's loan servicer and Eldorado's agent. In these communications, Eldorado's agent stated that "[t]he HOA foreclosure doesn't wipe out the fdot, and the HOA will not be paying the mortgage." (ECF No. 27-2) ("fdot" means "first deed of trust"). The agent's email is a misrepresentation of the foreclosure sale's effect on the deed of trust and constitutes a slight circumstance of unfairness. *See Nationstar Mortgage*, 405 P.3d at 645 n.11. Thus, U.S. Bank has shown that the foreclosure sale was commercially unreasonable.

**IV.     Conclusion**

In light of the forgoing, the court will grant summary judgment on U.S. Bank's quiet title claim and declare that the deed of trust encumbers the property.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Saticoy Bay's motion for summary judgment (ECF No. 26) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that U.S. Bank's motion for summary judgment (ECF No. 27) be, and the same hereby is, GRANTED, consistent with the foregoing.

. .

. . .

1 | The clerk shall enter judgment accordingly and close the case.
2 | DATED July 25, 2019.

_____
UNITED STATES DISTRICT JUDGE